IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>       Plaintiff,<br><br>    v.<br><br>ANDREW SMITH COMPANY,<br><br>       Defendant. | Case No. 22-CV-3615<br><br>**COMPLAINT FOR<br>DECLARATORY RELIEF** |

    Plaintiff Houston Casualty Company ("HCC"), by way of its Complaint for Declaratory Relief against Defendant Andrew Smith Company ("ASC") alleges:

## THE PARTIES

    1.  HCC is a Texas corporation engaged in the insurance business with a principal place of business in Houston, Texas.

    2.  Upon information and belief, Andrew Smith Company is a limited liability company formed under the laws of California with a principal place of business at 475 El Camino Real South, Salinas, CA 93908.

## JURISDICTION AND VENUE

    3.  This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1332(a) in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars ($75,000.00).

    4.  This action is brought pursuant to 28 U.S.C. § 2201 and § 2202 for a declaration of the parties' rights, duties, and obligations under the Product Contamination Insurance Policy issued by HCC to ASC, Policy No. H717-80330, for the policy period of August 21, 2017 through August 21, 2018 (the "Policy").

5. Venue is proper under 28 U.S.C. § 1391 because the Policy contains a Choice of Law/Forum clause which provides that "[t]his Policy, including all of its terms and conditions, will be governed by the laws of the State of New York, without giving effect to its principles of conflict of law. Further, it is agreed that in the event of the Insurer's failure to pay the amount claimed to be due hereunder, the Insurer and Insured agree to submit to the jurisdiction of the United States District Court for the Southern District of New York or the Supreme Court of the State of New York, New York County." Therefore, this Court has personal jurisdiction over the parties in this case.

## INTRODUCTION AND NATURE OF DISPUTE

6. This matter arises from HCC's issuance of a Product Contamination Insurance Policy to ASC in relation to ASC's business of supplying lettuce to produce processors. On or about April 13, 2018, the Centers for Disease Control and Prevention ("CDC") and the Food and Drug Administration ("FDA") issued a public warning for a multi-state outbreak of *E. coli* (serotype 0157:H7), relating to romaine lettuce grown in the Yuma, Arizona region of the United States. Based on the CDC warning, ASC sought coverage under the Policy for claimed losses in excess of $500,000. Following HCC's investigation, on or about August 1, 2019, HCC denied the claim on the grounds that coverage under the Policy had not been triggered (*i.e.,* that no Insured Event had occurred as set forth in the Policy). The Policy states that for coverage to be triggered, there has to be a showing that the product was *actually* contaminated. ASC had not provided any proof that actual contamination of the romaine lettuce had occurred and in fact admitted that "there were no positive tests during the period in question."

7. Following the denial of coverage, ASC requested that HCC reconsider its denial. When agreeing to do so, HCC requested additional information from ASC, including Certificates

of Analysis, showing results of the testing ASC admitted in its insurance application it conducts on the lettuce before the lettuce is shipped out into the commercial mainstream. ASC failed to produce any such certificates, denied knowledge of their existence, and in doing so, breached its duty to cooperate as required by the Policy. Although ASC refused to provide HCC with the requested Certificates of Analysis, HCC obtained a copy of one of the certificates filed by Freshway Foods in a lawsuit pending in the United States District Court, Eastern District of New York entitled *Ruocchio v. Doherty Enterprises, Inc.*, et. al., Case No. 2:20-cv-02564-RRM-AKT, brought by consumers who allegedly consumed contaminated lettuce (the "*Ruocchio* Lawsuit") (Dkt. 23-2). The Certificate of Analysis states that the test results for the product tested by ASC on January 18, 2018, before they were shipped out into the commercial mainstream, were "negative" for *E. coli*, confirming that HCC's denial of coverage was correct.

8.  An actual controversy has arisen and now exists between HCC and ASC concerning the rights and duties of the parties under the Policy. HCC contends that it has no obligation to defend, indemnify, or make payment to or on behalf of ASC because there is no coverage under the Policy. HCC is informed and believes and on that basis alleges that ASC disputes HCC's coverage determination. Therefore, HCC brings this complaint for declaratory relief requesting the Court determine the respective rights, duties, and obligations of HCC and ASC and specifically that the Policy does not provide coverage to ASC for any losses arising out of the April 2018 outbreak of *E. coli*.

**INSURANCE APPLICATION**

9.  On or about August 18, 2017, ASC completed a Product Contamination Generic Application ("Insurance Application") for the purpose of obtaining policy of insurance from HCC. ASC described itself as being in the business of "Grow[ing], Harvest[ing], Cool[ing], and

Ship[ping] [of] Fresh Produce." ASC listed Freshway Foods as one its top three top customers, with a 27% total sales to Freshway Foods.

10. ASC further represented on the Insurance Application that "product testing" and specifically, Microbiological, *E. coli* 0157:H7 and Salmonella testing were "utilized" by ASC. ASC stated that the testing of romaine lettuce was performed one to seven days before harvest. ASC advised that all tests are completed by third parties and that it retains an outside testing laboratory—IEH Laboratories—for the purpose of conducting the testing.

11. ASC also stated on the application that it (a) tests incoming raw materials for *E. coli* 0157:H7 and Salmonella; (b) requires Certificates of Analysis from all suppliers; and (c) that it has "test and hold" procedures in place that require confirmation of "negative" test results before ASC sends products out into the commercial mainstream.

## THE POLICY

12. Based on the statements in the Insurance Application, HCC issued Product Contamination Insurance, Policy No. H717-80330, to ASC with a policy period of August 21, 2017 through August 21, 2018. A true and correct copy of the Policy is attached hereto as **Exhibit A**.

13. The Policy's Insuring Agreement provides, in relevant part, that HCC "agrees to reimburse the Insured for Insured Losses…incurred directly and solely as a result of an Insured Event…." (Ex. A, Policy, Section 2, emphasis removed.)

14. "Insured Events" includes, among other things, Accidental Product Contamination, which is defined as "any *actual* accidental or unintentional contamination, impairment or mislabeling of Products…during their manufacture, blending, mixing, compounding, packaging, labeling, preparation, production, processing, distribution or storage…provided that consumption

4

or use of said Products, within 365 days of such consumption or use, either has resulted or would result in: [¶] (a) Clear and identifiable symptoms of Bodily Injury, to any person(s) or animal(s); or [¶] (b) Physical damage to or destruction of tangible property other than to Products or the Insured." (Ex. A, Policy, Section 5.1, emphasis removed, italics added.)

15. The Policy provides in Section 7.1 that "[b]y acceptance of this Policy, the Insured agrees that: (a) the statements in the Application are personal representations and that they will be deemed material; (b) this Policy is issued in reliance upon the truth of such representations; and (c) this Policy embodies all agreements existing between the Insured and the Insurer or any of their agents relating to this insurance." (Ex. A, Policy, emphasis removed.)

16. The Policy provides in Section 7.12 that "[t]he Insured will cooperate in every reasonable respect with the Insurer or their authorized representative, who may make any investigation they deem necessary in order to assess the validity or the amount of any claim made." (Ex. A, Policy, emphasis removed.)

**FACTUAL ALLEGATIONS**

17. On or about April 22, 2018 ASC tendered its claim under the Policy to HCC. Below is a summary of various pertinent communications between HCC and ASC.

18. On or about July 17, 2018, ASC completed a questionnaire sent by HCC and advised that "several tests are done for each crop including pre-harvest testing that includes 60 samples for each acre. These samples are taken and tested for multiple pathogens by an independent laboratory. **There were no positive tests during the period in question.**" ASC also advised that "[n]o product [samples are] available" for inspection.

19. On August 7, 2018, HCC advised ASC that based on the information that had been provided to HCC, it appeared coverage may not be available as an Insured Event under the Policy

5

had not occurred because it did not appear that any of ASC's products were *actually* contaminated or impaired. HCC requested that ASC provide any additional information or materials it may have that may be relevant to HCC's evaluation.

20. On or about February 20, 2019, ASC sent a letter to HCC discussing reports of Dr. Randall Singer and Dr. Gary Weber, dated February 22, 2019 and March 22, 2019, which HCC received on or about May 14, 2019.

21. Following a thorough investigation and analysis, including review of Dr. Singer's and Dr. Weber's reports, HCC determined that an Insured Event had not occurred. HCC issued its denial of coverage on August 1, 2019 on the grounds that:

  i. the FDA conducted a traceback related to the *E. coli* outbreak in an attempt to identify the source of the *E. coli* contamination and was unable to determine which, or how many, farms shipped lettuce that was contaminated with the *E. coli* strain 0157:H7.

  ii. the FDA determined that "the contaminated lettuce had to have been grown on multiple farms and processed at multiple off-farm fresh-cut product manufacturing/processing facilities";

  iii. the *E. coli* outbreak strain was identified in three samples of water collected along a 3.5 mile stretch of an irrigation canal in the Wellton area of Yuma, Arizona;

  iv. how and when the irrigation canal became contaminated with the outbreak strain was unknown;

  v. it was not known whether contamination with the outbreak strain in this irrigation canal extended beyond the 3.5 mile stretch; the FDA could

        not rule out that there were other sources of means of romaine lettuce contamination that were not identified during its Environmental Assessment investigation;

  vi.    the FDA's report noted that testing of water from the same three sites on the Wellton canal that tested positive in June 2018 were negative in August 2018; therefore, a positive test in June 2018 did not mean that the canal was contaminated in March 2018, at the time ASC's lettuce was harvested;

  vii.    there had been no evidence provided to indicate that any of the lettuce that Freshway Foods supplied to Panera Bread was, in fact, contaminated;

  viii.    the reports by Dr. Singer and Dr. Weber did not establish that there had been an Accidental Product Contamination, as that term is defined in the Policy; ASC represented that the only tests that were conducted on its lettuce at the time of harvesting were negative for *E. coli* and no further testing was done on the lettuce supplied by ASC; and

  ix.    neither Dr. Singer nor Dr. Weber concluded that there was proof the ASC lettuce was actually contaminated when it was delivered to Freshway Food's processing facility.

22.    ASC requested that HCC reconsider its denial. HCC agreed to conduct additional investigation at the request of ASC and requested additional documents, including on or about November 1, 2019 and December 27, 2019, that ASC provide test results or Certificates of Analysis relating to the testing of the lettuce that ASC represented in its application was routinely

7

conducted before the lettuce was shipped to Freshway Foods. Despite HCC's direct requests, no such test results or certificates have been provided to HCC by ASC, and ASC denied knowledge of their existence.

23. HCC has learned that Freshway Foods filed a Certificate of Analysis in the *Ruocchio* Lawsuit stating that on January 18, 2018, IEH Laboratories & Consulting Group tested five samples of romaine lettuce collected on January 18, 2018 for ASC. The Certificate of Analysis was signed by Silvia Mata, Authorized Analyst. The test results were "negative" for *E. coli* and Salmonella.

## FIRST CAUSE OF ACTION
### [Declaratory Relief as to HCC's Obligations under the Policy]

24. HCC repeats and re-alleges all allegations of this Complaint as set forth in paragraphs 1 through 23 herein.

25. In accordance with 28 U.S.C. §§ 2201 and 2202, there is a present and actual dispute and controversy between HCC and ASC regarding HCC's and ASC's rights, duties, and obligations under the Policy.

26. An actual controversy has arisen and now exists between HCC and ASC concerning the rights, duties, and obligations of the parties under the Policy. HCC contends that it has no obligation to defend, indemnify, or make payment to or on behalf of ASC because there is no coverage under the Policy.

27. As described in Section 7.2 of the Policy, HCC issued the Policy in reliance on the representations made by ASC in its Insurance Application. Specifically, HCC relied on ASC's representations that (a) it tests incoming raw materials for *E. coli* 0157:H7 and Salmonella; (b) ***it requires Certificates of Analysis from all suppliers***; and (c) that it has "test and hold" procedures in place that require confirmation of "negative" test results before ASC sends products out into the

commercial mainstream. Further, Section 7.2 states that ASC "agrees that…the statements in the Application are personal representations and that they will be deemed material."

28. Despite formal written requests for such Certificates of Analysis, ASC has refused to produce them.

29. Section 7.12 of the Policy requires that ASC "cooperate in every reasonable respect with [HCC]." Yet, ASC has breached the cooperation provision of the Policy by its failure to produce the requested Certificates of Analysis even though such certificates exist, as evidenced by a copy of one such certificate filed in the *Ruocchio* Lawsuit.

30. Therefore, there is no coverage under the Policy for ASC's claims based upon ASC's failure to comply with its cooperation obligation under the Policy.

31. There is also no coverage under the Policy for ASC's claims because no Insured Event has occurred. The Insuring Agreement states that HCC agrees to reimburse ASC for losses incurred directly and solely as a result of an Insured Event. ASC has failed to satisfy its burden in establishing that the initial scope of coverage of the Policy has been implicated because there is no evidence that ASC's product was *actually* contaminated.

32. HCC is informed and believes and on that basis alleges that ASC disputes HCC's denial of coverage under the Policy. Therefore, HCC brings this complaint for declaratory relief requesting the Court determine the respective rights, duties, and obligations of HCC and ASC. Specifically, based on the foregoing, HCC seeks a declaration that there is no coverage under the Policy for ASC's claims.

**PRAYER FOR RELIEF**

WHEREFORE, HCC prays for relief as follows:

1. For a judgment declaring that there is no insurance coverage under the Policy as related to ASC's claim;

2. For a judgment declaring HCC owes no duty to defend, indemnify, or make a payment to or on behalf of ASC under the Policy as related to ASC's claim;

3. For an award of attorneys' fees and costs incurred by HCC in this action;

4. For such other and further relief as the Court deems just and equitable.

Dated: May 4, 2022  
New York, New York

TRESSLER LLP

By:     /s/  
    Courtney E. Scott (CS9744)

One Penn Plaza, Suite 4701  
New York, New York 10119  
Tel: (646) 833-0900  
cscott@tresslerllp.com

TUCKER ELLIS, LLP  
Karl A. Bekeny (*pro hac vice forthcoming*)  
Kevin M. Young (*pro hac vice forthcoming*)  
950 Main Avenue, Suite 1100  
Cleveland, OH 44113  
Kevin.Young@tuckerellis.com

*Counsel for Plaintiff Houston Casualty Company*