UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────────┐
│ USDC SDNY                                         │
│ DOCUMENT                                          │
│ ELECTRONICALLY FILED                              │
│ DOC #: _____                          │
│ DATE FILED: _10/28/2022_____                     │
└─────────────────────────────────────────────────┘
```

HOUSTON CASUALTY COMPANY,

                 Plaintiff,

       -against-

ANDREW SMITH COMPANY, LLC,

                 Defendant.

22 Civ. 3615 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

      Plaintiff, Houston Casualty Company ("HCC"), brings this declaratory judgment action against Defendant, Andrew Smith Company, LLC ("ASC").  Amend. Compl., ECF No. 5.  ASC seeks to stay this case pending the resolution of other proceedings involving ASC.  ECF No. 24; Def. Mem., ECF No. 25 at 5.  For the reasons stated below, ASC's motion to stay is GRANTED.[1]

<h1 align="center">BACKGROUND[2]</h1>

      ASC "contracts with various growers to purchase, sell[,] and transport romaine lettuce." Def. Mem. at 4.  HCC issued an insurance policy related to ASC's business with a policy period of August 21, 2017, through August 21, 2018 (the "Policy").  Amend. Compl. ¶¶ 6, 12; Policy, ECF No. 5-1.  On April 13, 2018, the Centers for Disease Control and Prevention and the Food and Drug Administration issued a warning for a multi-state outbreak of *E. coli* linked to lettuce grown in the Yuma, Arizona region.  Amend. Compl. ¶ 6; Def. Mem. at 1, 4, 7.  ASC sought coverage under the Policy following the outbreak.  Amend. Compl. ¶ 6.  HCC "denied [ASC's] claim on the grounds [sic] that coverage under the Policy had not been triggered."  *Id.*

---

[1] ASC's request for oral argument is DENIED.
[2] For purposes of deciding this motion to stay, the Court accepts as true the facts alleged in the amended complaint. *Anthony L & S, LLC v. Doherty*, No. 13 Civ. 5495, 2014 WL 83506, at *1 n.1 (S.D.N.Y. Jan. 8, 2014).

The Policy provides that HCC "agrees to reimburse [ASC] for [i]nsured [l]osses . . . incurred directly and solely as a result of an [i]nsured [e]vent." Policy § 2 (emphases omitted). The Policy defines "insured losses" as, *inter alia*, "[r]ecall [e]xpenses (including [c]ustomer [r]ecall [e]xpenses)." *Id.* § 4.1 (emphases omitted).[3] Recall expenses, in turn, "mean any reasonable and necessary expenses incurred by [ASC] in the procedure of recall, inspection, examination, destruction or disposal of [c]ontaminated [p]roducts, including . . . "[l]egal fees and expenses." *Id.* § 5.22 (emphases omitted). Customer recall expenses consist of "the reasonable and necessary expenses incurred by a [c]ustomer in the procedure of recall, inspection, examination, destruction or disposal of [c]ontaminated [p]roducts, limited to [among other items,] [l]egal fees and expenses." *Id.* § 5.9 (emphases omitted).[4] Contaminated products refer to "any [p]roducts that have been contaminated, impaired or mislabeled as a direct result of an [i]nsured [e]vent." *Id.* § 5.6 (emphases omitted).[5]

The Policy defines "insured events" as, *inter alia*, "[a]ccidental [p]roduct [c]ontamination," which

> means any actual accidental or unintentional contamination, impairment or
> mislabeling of [p]roducts . . . during their manufacture, blending, mixing,
> compounding, packaging, labeling, preparation, production, processing,
> distribution[,] or storage on [ASC's] premises or at a storage site contracted by
> [ASC], provided that consumption or use of said [p]roducts, within 365 days of
> such consumption or use, either has resulted or would result in: (a) [c]lear and
> identifiable symptoms of [b]odily [i]njury, to any person(s) or animal(s); or (b)

---

[3] The Policy defines customer as "[ASC's] direct customer(s) who purchased and/or received [p]roducts directly from [ASC]." *Id.* § 5.8 (emphases omitted).

[4] The Policy "will . . . cover[]" customer recall expenses "provided that: (i) [c]ontaminated [p]roducts become an ingredient or component part in a product manufactured, distributed[,] or handled by a [c]ustomer, or is a finished product sold by [ASC] to a [c]ustomer"; (ii) "[ASC] is legally obligated to reimburse said [c]ustomer"; and (iii) "[t]he expenses enumerated herein will not exceed the expenses [ASC] itself would have incurred in recalling the aforementioned [c]ustomer's products." *Id.* §§ 5.9(i)–(iii) (emphases omitted).

[5] Contaminated products "does [sic] not include any unharvested crops and/or livestock." *Id.* § 5.6 (emphases omitted). Products are "all ingestible products for human or animal use or consumption, both finished or in process . . . manufactured, distributed[,] or handled by [ASC] (or manufactured by a contract manufacturer for [ASC]) and which are, or will be, available for sale by [ASC]." *Id.* § 5.20 (emphases omitted).

[p]hysical damage to or destruction of tangible property other than to [p]roducts of [ASC].

*Id.* §§ 3.1, 5.1 (emphases omitted).[6]

On May 4, 2022, HCC commenced this declaratory relief action.  ECF No. 1.  On August 15, 2022, ASC filed a motion to stay this case.  ECF No. 24.  ASC states that there are four proceedings (the "Underlying Proceedings")[7] involving "claims asserted against [it] for damages following [the] [*E.*] *coli* outbreak attributed to the Yuma region of Arizona where th[e] lettuce was originally g[r]own."  Def. Mem. at 1, 5.  The Underlying Proceedings "involve the common factual issue of whether the subject romaine [lettuce] was actually contaminated with [*E.*] *coli* and, if so, the party or parties responsible for that actual contamination."  *Id.* at 6.  ASC argues that it is "in the position of having to defend against allegations of actual contamination in the Underlying [Proceedings] while simultaneously needing to prove the existence of actual contamination to avoid potentially forfeiting insurance coverage in this action."  *Id.* at 1.

In its opposition, HCC argues that "[a] cursory review of the dockets in the [Underlying Proceedings] demonstrates that the issues to be resolved in those cases are not dispositive of the issues in this case and do not counsel in favor of a stay."  Pl. Opp. at 1, ECF No. 27.  HCC states that the issues in two of the Underlying Proceedings, *Ingberg* and *Ruocchio*, "concern whether ASC has any obligation to indemnify its customers . . . for attorney fees and expenses pursuant to a vendor agreement with [a customer]," not "[a]ctual contamination."  *Id.* at 1, 3 (emphasis omitted).  HCC contends that the Policy "does not provide for defense or indemnity for ASC's

---

[6] The Policy states that bodily injury "means physical injury, sickness[,] or disease, including death" and "does not include mental anguish and emotional distress, except when due to a physical injury, sickness[,] or disease."  *Id.* § 5.5.
[7] The Underlying Proceedings are: (1) *Ingberg v. Panera, LLC et al.*, No. 20SL-CC03116 (Mo. Cir. Ct. Aug. 26, 2020); (2) *Ruocchio v. Panera LLC*, No. 20 Civ. 2564 (E.D.N.Y. Aug. 26, 2020); (3) *Andrew Smith Co. v. Desert Premium Farms, LLC*, No. 21 Civ. 2996 (Cal. Super. Ct. Feb. 18, 2022); and (4) *Andrew Smith Co. v. Marlatt Bros. Produce, LLC*, No. 01-21-0017-1988 (A.A.A. May 2, 2022).  Def. Mem. at 5.

liability in any pending third-party lawsuits." *Id.* at 2.  In addition, HCC argues that the other two actions involving lettuce growers, *Desert Premium Farms, LLC* and *Marlatt Brothers Produce, LLC*, are "affirmative lawsuits filed by ASC against its suppliers and therefore, ASC's indemnity obligations cannot [be] and are not at issue there and no resolution of those cases could impact on [sic] HCC's obligations in this case." *Id.* at 1 (emphasis omitted).

ASC states that HCC "omits any mention of the Policy's third-party indemnity coverage for [c]ustomer [r]ecall [e]xpenses[,]" which "specifically include indemnifying a [c]ustomer's 'legal fees and expenses.'" Def. Reply at 3–4 (emphases and alteration omitted), ECF No. 29. ASC also maintains that "[t]he issue of 'actual contamination' is . . . directly at issue and being litigated" in the Underlying Proceedings because *Ingberg* and *Ruocchio*, which involve contract claims, "depend[] on whether there was actual contamination of the romaine lettuce," and the growers in *Desert Premium Farms, LLC* and *Marlatt Brothers Produce, LLC*, "asserted counterclaims alleging that ASC is the 'sole party at fault and responsible for' any liability arising out of the alleged contamination of romaine lettuce." *Id.* at 6–9.

## DISCUSSION

### I.   Legal Standard

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The Declaratory Judgment Act gives "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (per curiam); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

4

In exercising their discretion, "district courts consider a range of non-exclusive, fact-intensive factors[.]" *Lafarge Can. Inc. v. Am. Home Assurance Co.*, No. 15 Civ. 8957, 2018 WL 1634135, at *4 (S.D.N.Y. Mar. 31, 2018). These include:

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding . . . (5) avoiding duplicative proceedings; . . . (6) avoiding forum shopping . . . (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law . . . .

*XL Ins. Am., Inc., v. DiamondRock Hospitality Co.*, 414 F. Supp. 3d 605, 610 (citing *TIG Ins. Co. v. Fairchild Corp.*, No. 07 Civ. 8250, 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008)). The Second Circuit has also used another set of factors to "guide the exercise of discretion in Declaratory Judgment Act cases." *Dow Jones & Co.*, 346 F.3d at 359. The *Dow Jones* factors include:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . (2) whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [(3)] whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; [(4)] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [(5)] whether there is a better or more effective remedy.

*Id.* at 359–60 (citations omitted). "[T]hese factors are grounded in the permissive language of the Declaratory Judgments Act." *XL Ins. Am.*, 414 F. Supp. 3d at 611.

Federal courts have stayed declaratory judgment actions "after finding that issues raised in the actions before them either turn on, or would be resolved in party by, determinations of liability yet to be made in . . . parallel proceedings." *Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526, 2019 WL 1407455, at *3 (S.D.N.Y. Mar. 28, 2019). Proceedings are "parallel" when "there is an identity of parties, and the issues and relief sought are the same." *Stoncor Grp., Inc. v. Peerless*

5

*Ins. Co.*, 322 F. Supp. 3d 505, 514 (S.D.N.Y. 2018) (citation omitted).   "The text of [the] Declaratory Judgment Act, however, does not limit the Court's discretion to abstain from providing such a remedy only when a parallel action exists."  *Id.*; *Lafarge Can. Inc.*, 2018 WL 1634135, at *8 (finding that a stay was warranted "even [though the] case [wa]s not directly parallel to [an] underlying litigation, [because] the factual and legal issues in both cases overlap[ped] significantly").

II.    Analysis

The Court concludes that a stay in this case is appropriate.  Although this action is not directly parallel to the Underlying Proceedings, the considerable overlap of factual and legal issues among the cases tips the scale in favor of abstention.  *Lafarge Can. Inc.*, 2018 WL 1634135, at *8; *Stoncor Grp., Inc.*, 322 F. Supp. 3d at 514.  The Underlying Proceedings concern the ultimate source of the *E. coli* outbreak, which goes to the core of whether HCC is obligated to reimburse ASC under the terms of the Policy.  "Ruling prematurely here would add confusion, not clarity." *Lafarge Can. Inc.*, 2018 WL 1634135, at *9.

**CONCLUSION**

Accordingly, ASC's motion to stay is GRANTED and the action is STAYED until further order of the Court.[8]  When the Underlying Proceedings are resolved, the parties shall notify the

---

[8] The parties' deadline to file a joint letter and case management plan is therefore ADJOURNED *sine die*.

Court within five days.  In addition, the parties shall provide the Court with a joint update on the status of the Underlying Proceedings every ninety days.

The Clerk of Court is directed to terminate the motion at ECF No. 24.

SO ORDERED.

Dated: October 28, 2022
New York, New York

ANALISA TORRES
United States District Judge